**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-7852**

UNITED STATES OF AMERICA,

              Appellee,

        v.

DANIEL H. KING,

              Appellant.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.   Louise W. Flanagan,
District Judge. (5:10-hc-02009-FL-JG)

Submitted:  August 13, 2013        Decided:  September 16, 2013

Before NIEMEYER, GREGORY, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Joseph L. Bell, Jr., BATTS, BATTS & BELL, LLP, Rocky Mount,
North Carolina, for Appellant.   Thomas G. Walker, United States
Attorney, R.A. Renfer, Jr., Assistant United States Attorney,
Edward D. Gray, Assistant United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The district court ordered Appellant Daniel H. King civilly committed as a sexually dangerous person under the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), Pub. L. No. 109-248, § 302, 120 Stat. 587, 619-22 (codified in 18 U.S.C. §§ 4241, 4247, and 4248). King appealed, now arguing the district court erred both in referring his case to a magistrate judge and in certifying him as a sexually dangerous person. Finding no error, we affirm the district court's decision.

I.

The record reveals that King's history is replete with instances of sexual misconduct and violence towards women.

## King's criminal history

- In 1971, at approximately age twelve, King began exposing his penis to other children. His parents sought professional help for this behavior, but were told King would outgrow the problem.

- On April 18, 1974, at the age of fifteen, King was charged with two counts of indecent exposure after exposing his penis to two girls age seven and eight, asking them if they wanted to touch it. King pled guilty to both counts. He was given one year of juvenile probation.

- On October 10, 1975, when he was seventeen, King was charged and pled guilty to the offense of "seize, transport, and detain with intent to defile the victim's person." King approached a female stranger, age nineteen, and after a brief conversation, grabbed her with one hand and placed a knife at her neck with the other. King then forced her into the backseat of a car driven by another male, and they drove away. King held the young woman around her throat and fondled her breast. He was given

2

indeterminate probation not to last past his twenty-first birthday for the offense.

- On April 7, 1978, at the age of nineteen, King was charged with two counts of attempted abduction. King reported he attempted to abduct two women on separate occasions on the same day. The first count was nolle prossed, and King pled guilty to the second count. He was sentenced to ten years' imprisonment with five years suspended plus five years probation. On February 3, 1984, King's probation was revoked due to his commission of a crime in late 1983 (see below), and he received a five-year term of imprisonment. He was paroled from imprisonment on November 14, 1985, and began serving the sentence for the 1983 offense.

- On November 23, 1983, at the age of twenty-five and while on probation, King was charged with simple assault, two counts of carrying a dangerous weapon-felony, and assault with intent to kidnap while armed. In this incident, King approached a female stranger and asked her to walk him to his car because he was drunk. The woman declined, and King told her not to scream or he would kill her. He then attempted to push her into her vehicle, but the woman kicked and screamed, causing King to flee. One count of carrying a dangerous weapon-felony was dismissed, and King pled guilty to the other count and to simple assault. King received two-to-eight years on the carrying a dangerous weapon count and a one year consecutive term for the simple assault. He was paroled on September 3, 1987.

- Finally, On February 19, 1988, at age twenty-nine and while on parole, King was charged in the District of Columbia with assault with intent to rob while armed and armed kidnapping. King grabbed a woman around her neck, threatened her with a knife and instructed her not to scream, led her down the street, and asked her if she had any money. King then tried to force her into her vehicle. King was thwarted when a passerby diverted his attention, and the victim was able to break his hold and run away. The assault with attempt to rob charge was dismissed, and King pled guilty to armed kidnapping. King was sentenced to twelve to thirty-six years for this offense. King surrendered to the custody of the Bureau of Prisons (BOP) and was serving time for this offense before he was civilly committed.

## King's misconduct while in BOP custody

King's misconduct did not dissipate while incarcerated.

- On April 9, 1993, King was in a one-on-one therapy session with a female BOP psychologist. King asked the psychologist to turn off the audio recorder, and said "I want you to touch my penis." The BOP sanctioned King for this incident.

- On October 18, 2011, on the morning of his § 4248 hearing, King exposed himself to female detainees in a cell across the hall from his at the Wakefield County Jail. King purposefully masturbated in view of the female detainees.

- While in the custody of the BOP King was also sanctioned for the following: threatening bodily harm to a female staff psychologist (1995); possessing a dangerous weapon (1998); wrongful use/possession of drugs and alcohol (1998, 2000, 2004); possessing intoxicants-homemade alcohol (1999, 2006); disruptive conduct while high (1999); refusing to take an alcohol test (1999); use of drugs/drug items (2000); attempted escape (2000); threatening bodily harm (2000); use of drugs (2003, 2005, 2009); possessing intoxicants and use of drugs (2007); and refusing an order/being insolent to staff member (2010).

- Also while in custody, BOP staff confiscated magazines from King with sexually suggestive pictures of women, and intercepted an email from him in which he said he planned on purchasing a pay-as-you-go cellphone upon release so authorities could not track him.

## King's Section 4248 proceedings

King was scheduled for release on January 20, 2010. One day prior to his scheduled release date, the government filed a certificate with the district court certifying that King is a sexually dangerous person as defined by the Adam Walsh Act, see 18 U.S.C. § 4248(a), staying King's release. On June 25, 2010, King filed a motion requesting a commitment hearing. Discovery

4

commenced, with an end date of September 15, 2011, and a hearing date set for October 17, 2011 before a magistrate judge. On September 16, 2011, King moved the court to reconsider its decision to refer his case to a magistrate judge, which was denied on October 11, 2011. The commitment hearing was held October 17-19, and continued on November 16. At the hearing, the magistrate judge accepted into evidence various documents submitted by both parties, including forensic evaluation reports, medical records, court records, police reports, and BOP records. The court also heard testimony from two expert psychologists on behalf of the government – Dr. Gary Zinik and Dr. Dawn Graney, and one expert psychiatrist on behalf of King – Dr. Fabian Selah.

## Dr. Zinik's Testimony

Dr. Zinik provided expert testimony on behalf of the government, opining that King met the requirements for civil commitment. Dr. Zinik formed his opinion after interviewing King and evaluating King's criminal history, medical history, social history, substance abuse history, institutional adjustment, and other records. Dr. Zinik opined that King suffers from Paraphilia[1] Not Otherwise Specified-forced sex with

---

[1] "Paraphilia" is defined in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision ("DSM-IV-TR") as "recurrent, intense sexually arousing fantasies, (Continued)

nonconsenting females ("Paraphilia NOS-nonconsent"); Exhibitionism; Polysubstance Abuse; and Antisocial Personality Disorder. Dr. Zinik expressed that Paraphilia NOS is a serious mental illness under the Adam Walsh Act. Dr. Zinik based his diagnosis on King's record of rapid reoffending upon release from confinement, the sexual motivation behind King's crimes, evidence that King planned his attacks, King's admissions of his continued sexual urges, and King's repeated misconduct while incarcerated.

Dr. Zinik noted that during an interview with the Parole Commission in 1997, King said he needed treatment for his "repetitive pattern of behavior that has been unacceptable in society." Further, in a 2009 letter addressed to BOP staff, King stated he has not developed the ability to control himself. There was also evidence that King stated verbally to BOP psychology staff that he has committed undetected sexual offenses in the past, that the sex treatment he has received has been ineffective, that he has not received adequate tools to control himself, and that he would sexually reoffend if released. All of this, in addition to King exposing himself on

urges or behaviors generally involving (1) nonhuman objects, (2) the suffering or humiliation of oneself or one's partner, or (3) children or other nonconsenting persons that occur over a period of at least six months."

the day of his § 4248 hearing, was "very compelling evidence" that King had a "total breakdown in sexual impulse control."

When deciding whether King would have serious difficulty in refraining from sexually violent conduct if released, Dr. Zinik did both a clinical analysis and a statistical analysis using three actuarial risk assessment tools that have a moderate degree of accuracy. On all three measures King ranked as having a "high" risk of reoffending. Dr. Zinik also found that a number of dynamic risk factors, such as an intimacy deficit, lack of sexual self-regulation, lack of cooperation with supervision, and a lack of general self-regulation, increased King's likelihood of reoffending.

Finally, Dr. Zinik looked at the factors that weigh against King reoffending if released, including: (1) King had not sexually reoffended while in BOP custody; (2) King only had fifteen years left in his "time at risk," and once outside the risk period his motivation and ability to reoffend will significantly decrease; and (3) his advanced age. However, despite considering these "protective" factors, Dr. Zinik still formed his expert opinion that King would have serious difficulty refraining from sexually violent conduct if released, and therefore weighing everything together, found that King qualifies as a sexually dangerous person.

7

### Dr. Graney's Testimony

Dr. Graney is employed by the BOP and testified on behalf of the government. She too opined that King meets the criteria for civil commitment under the Adam Walsh Act, and diagnosed King as suffering from: (1) Paraphilia NOS-nonconsent; (2) Exhibitionism; (3) Alcohol Abuse; (4) Opiate Abuse; and (5) Antisocial Personality Disorder. Her report reached these conclusions by detailing King's developmental history, relationship history, education history, military/work history, substance abuse history, nonsexual criminal history, sexual criminal history, psychosexual history, mental health history, medical history, her diagnostic treatment impressions, and by using actuarial instruments. Based on all of this information, Dr. Graney also found that King would have a high risk of reoffending if released.

### Dr. Saleh's Testimony

Dr. Saleh testified on King's behalf, opining that King does not meet the criteria for civil commitment. As part of his evaluation, Dr. Saleh interviewed King, during which King in toto retracted his statements that he would reoffend if released. King told Dr. Saleh that he simply made those statements in order to remain confined and to receive continued treatment. As such, Dr. Saleh found that King had a history of "acting out and feigning psychiatric symptoms for secondary

gain." Consistent with Dr. Zinik and Dr. Graney, Dr. Saleh diagnosed King as suffering from Antisocial Personality disorder, but did not find King to suffer from any other mental illness. Dr. Saleh opined King does not suffer from a paraphilia because outside of King's behavior in the mid-1970s, evidence of paraphilia is "inexistent." Dr. Saleh testified that the incident of King exposing himself the day of his § 4248 hearing does not change his opinion. Finally, in his report, Dr. Saleh noted that he did not believe King to have committed a sexually violent act necessary for commitment. Dr. Saleh did not provide an opinion as to whether King would have serious difficulty refraining from sexually violent conduct if released, nor did he use any actuarial risk assessment tools in his evaluation.

Magistrate's Recommendation and District Court Decision

Based on all the evidence, the magistrate judge found King's statements regarding his impulse control to be credible, despite characterizing King as a "habitual liar." The magistrate judge reached this conclusion based on King self-reporting his impulse to engage in nonconsensual sexual encounters on at least ten separate occasions over the past three decades. King's own behavior over the time-period corroborated his finding. Therefore, when turning to the elements necessary for civil commitment, the magistrate judge

9

first found that King's 1975 conviction for the offense of seize, transport, and detain with intent to defile the victim's person satisfied the first element – whether King had previously engaged in sexually violent conduct. As to whether King had a serious mental illness, the magistrate judge found persuasive the testimony of Drs. Zinik and Graney, finding that King suffered from a "paraphilic disorder characterized by his impulse to engage in nonconsensual sexual encounters with women," yet refused to attach the formal diagnosis of Paraphilia NOS-nonconsent to King's mental illness. The magistrate judge further found that the disorder is serious because of the substantial disruption it caused in King's life. And finally, the magistrate judge found there was clear and convincing evidence that King would have serious difficulty refraining from sexually violent conduct if released, as evinced by his own statements. As further support, the magistrate judge noted that King's paraphilic disorder impacted impulse control, as shown by his conduct both before his surrender to BOP custody and during, and the actuarial measures indicating King's future risk (although the magistrate judge did not give the assessments "great weight"). Therefore, the magistrate judge recommended that King met the criteria for civil commitment under the Adam Walsh Act.

10

King entered objections to the magistrate judge's report and recommendations, arguing the magistrate judge erred in finding his statements regarding his sexual impulse control credible, and that the magistrate judge erred in finding he satisfied the elements necessary for civil commitment. The district court reviewed the disputed issues de novo and adopted the magistrate judge's unchallenged findings. After independently reviewing the contested issues, the district court found the magistrate judge's reasoning persuasive and adopted the magistrate judge's conclusion — that King qualifies as a sexually dangerous person under the Adam Walsh Act, and therefore meets the criteria for civil commitment.

King timely appealed.


II.

We review the district court's factual findings for clear error and legal decisions de novo. United States v. Hall, 664 F.3d 456, 462 (4th Cir. 2012).

A.

Before we decide whether the district court erred in finding King to be sexually dangerous under the Adam Walsh Act, we address King's objection to the district court's referral of this matter to a magistrate judge for an evidentiary hearing. King has conceded both before the district court and this Court

11

that the district court had the authority to refer this matter to a magistrate judge. See J.A. 29; Appellant's Br. 16; see also 28 U.S.C. § 636(b)(1)(B) (conferring power to magistrate judges to conduct evidentiary hearings in civil matters); Gomez v. United States, 490 U.S. 858, 872 (1989) (stating magistrate judges have been granted authority "to conduct trials of civil matters"). Yet despite this concession, King argues that because the Adam Walsh Act makes no mention of a magistrate judge's role in § 4248 commitment proceedings, such referral was improper.[2]

We recently held that civil commitment proceedings under § 4248 are civil and not criminal in nature. See United States v. Timms, 664 F.3d 436 (4th Cir.), cert. denied, 133 S. Ct. 189 (2012); see also United States v. Comstock, 627 F.3d 513, 520-21 (4th Cir. 2010). As a civil proceeding, therefore, the district court had the authority pursuant to the Federal Magistrates Act to refer this case to a magistrate judge for an evidentiary hearing. See 28 U.S.C. § 636(b)(1)(B). That the Adam Walsh Act

---

[2] King also argues that referral of § 4248 commitment proceedings to a magistrate judge does not further the purposes of the Federal Magistrates Act. We disagree. The district court referred this matter to a magistrate judge to ensure that King would have a speedy hearing. At the time there were considerable delays taking place in the district with respect to § 4248 hearings. This is the type of supporting role envisioned for magistrate judges by the Federal Magistrates Act. See Peretz v. United States, 501 U.S. 923, 929 (1991).

12

does not specifically mention magistrate judges does not limit the sweep of the Federal Magistrates Act. Moreover, the record indicates the district court reviewed de novo all objections made to the magistrate's report and recommendations and scoured the record before reaching its decision. Thus, we find no error in the referral of this matter to a magistrate judge.

## B.

Next, King challenges the district court's determination that he is sexually dangerous as defined by the Adam Walsh Act. In order to be committed as a sexually dangerous person the government must prove by clear and convincing evidence that: (1) King engaged in or attempted to engage in sexually violent conduct or child molestation; (2) King suffers from a serious mental illness, abnormality, or disorder; and (3) because of the serious mental illness, abnormality, or disorder, King would have serious difficulty in refraining from sexually violent conduct or child molestation if released. 18 U.S.C. §§ 4248(a), (d); see United States v. Francis, 686 F.3d 265, 274 (4th Cir. 2012).

## 1.

### King engaged in sexually violent conduct

King does not dispute that he has previously engaged in sexually violent conduct. Indeed, more than one incident in King's criminal history satisfies this element.

King suffers from a serious mental illness

King does dispute, however, that the government proved by clear and convincing evidence that he suffers from a serious mental illness requiring commitment. Our review of the record proves King's argument unavailing.

Two expert witnesses, Drs. Zinik and Graney, opined King suffered from a paraphilic disorder, characterized by his intense desire to engage in nonconsensual sex with women. The experts reached this conclusion based on King's extensive criminal history, his repeated misconduct while incarcerated, and his repeated assertions about his wanton sexual desires and inability to control them. Dr. Selah reached a contrary conclusion. Dr. Selah discounted King's self-reporting, finding that he is a pathologic liar. Without King's statements, Dr. Selah found that there was little evidence that King suffered from a paraphilia – specifically citing that King had not engaged in any sexually violent acts while incarcerated.

When "[e]valuating the credibility of experts and the value of their opinions," we are "especially reluctant to set aside a finding based on the trial court's evaluation of conflicting expert testimony." Hall, 664 F.3d at 462 (citation omitted). It was within the province of the district court to determine which expert opinion to credit. There is nothing to indicate

14

that Drs. Zinik and Graney's testimony is inconsistent with the evidence presented. And expert opinion is critical to determining whether King suffers from a mental illness. See Addington v. Texas, 441 U.S. 418, 429 (1979). Moreover, the district court specifically found King's self-reporting to be credible, and we are required to give "due regard" to a trial court's credibility determination of a witness. See Fed. R. Civ. P. 52(a)(6); Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985). The fact that Dr. Selah's expert opinion rested on a finding that King's self-reporting was not credible runs contrary to the magistrate judge's conclusion, and therefore undermines its utility.[3] And it is not dispositive that King has not committed an overt sexually violent act while incarcerated, as paraphilia is characterized by both fantasies and urges, not just physical behavior.

Essentially, whether King suffers from a "serious mental illness, abnormality or disorder" under the Adam Walsh Act is a question of fact that we will only overturn for clear error.

---

[3] We also find it curious that Dr. Selah states there is no record of King committing a sexually violent act in the past, even though King himself is willing to concede this point. We have clearly stated that it is error for a district court to rely upon the testimony of an expert who "largely ignored all contradictory evidence" and whose "analysis was internally inconsistent." United States v. Wooden, 693 F.3d 440, 455 (4th Cir. 2012).

U.S. v. Hill, 649 F.3d 258, 262 (4th Cir. 2011). And "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson, 470 U.S. at 574. Because there is no evidence that Drs. Zinik and Graney's testimony was clinically unsound or unsupported by fact or science, we find that their opinions, with support of King's voluminous record, establishes by clear and convincing evidence that King suffered from a paraphilia.

3.

King would have serious difficulty refraining

Finally, King argues the government failed to prove by clear and convincing evidence that he would have serious difficulty in refraining from sexually violent conduct if released. This argument runs contrary to the record.

The serious difficulty element "refers to the degree of the person's 'volitional impairment,' which impacts the person's ability to refrain from acting upon his deviant interests." Hall, 664 F.3d at 463 (citing Kansas v. Hendricks, 521 U.S. 346, 358 (1997)). The fact that the district court found credible King's repeated assertions he would have difficulty refraining from sexually violent conduct is evidence enough. Moreover, both Dr. Zinik and Dr. Graney testified it was their expert belief that King would have serious difficulty refraining. And their expert testimony is supported by King's conduct, as he has

16

"repeated involvement in sexually-motivated offense behaviors," and has a "habit in engaging in offenses for which he is likely to get caught." In addition, King presently refuses to acknowledge he has a sexual problem that will require effort to keep in check should he be released. This is a likely indicator that King will not be amenable to future treatment. And the actuarial measures all indicate King has an elevated risk of reoffending. With all this considered, even in light of the paucity of King's overt sexually violent conduct while in BOP custody, the evidence shows King will have serious difficulty in refraining from sexually violent conduct if released.

## III.

Ultimately, we will not reverse unless "we are left with the definite and firm conviction that a mistake has been committed." United States v. Caporale, 701 F.3d 128, 135 (4th Cir. 2012) (internal citations and quotation marks omitted). We have no such conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process. The district court's judgment is affirmed.

AFFIRMED

17