# UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-4500

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

DONTA MONTRICE OLIVER,

        Defendant – Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Frank D. Whitney, District Judge. (3:19−cr−00188−FDW−DSC−1)

Argued: December 7, 2021                       Decided: April 26, 2022

Before DIAZ and QUATTLEBAUM, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Vacated and remanded by unpublished per curiam opinion. Senior Judge Traxler wrote an opinion concurring in the result.

**ARGUED:** Ann Loraine Hester, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Anthony Martinez, Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. William T. Stetzer, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Donta Oliver pleaded guilty to unlawful possession of a firearm. Over Oliver's objection, the district court enhanced his sentence because he possessed the firearm in connection with two other felonies—assault with a deadly weapon and discharging a weapon into occupied property. The court sentenced Oliver to 70 months' imprisonment and three years' supervised release, imposing the district court's standard conditions.

On appeal, Oliver challenges the enhancement and four of the supervised-release conditions. For the enhancement, he argues the court erred in two ways: first by shifting the burden of proof on self-defense, and second by finding no evidence that others at the scene had firearms, thus rejecting his self-defense claim. As to the conditions, he asserts that the court failed to adequately explain its reasons for imposing them.

We vacate the judgment and remand for resentencing.

I.

A.

Oliver and his girlfriend, LaToya Stone, visited a nightclub on Halloween. While at the club, Kurt Hendrix, a gang member, repeatedly approached Stone (whom Hendrix had once dated) and touched her. Stone told Hendrix that she was with her boyfriend, but Hendrix continued his advances. At one point, Hendrix touched Stone while she was sitting alone at the bar. As she walked to Oliver, Hendrix left. He returned soon after and began shouting at Oliver.

3

A security guard got between Hendrix and Oliver and told Hendrix to calm down. He refused. The guard then escorted Hendrix and Oliver to the front door. As they exited, three members of Hendrix's gang attacked the security guard. A brawl ensued. When one of the attackers, Akim Smith, pulled a gun, the guard fled. Acting on the club owner's advice, Oliver escaped through the back door. Hendrix and his gang, apparently unaware that Oliver had left, waited for him out front.

When Stone discovered that Oliver was no longer at the club, she left through the front door. After Hendrix cursed at her, she drove off in her car and called Oliver. The two agreed to rendezvous at a nearby parking lot. Smith and one other gang member pursued Stone by car. Hendrix, meanwhile, followed on foot.

As Oliver got into Stone's car, he saw Hendrix walking down the street—a beer bottle in hand—and Smith's car following them. Oliver grabbed a gun from the car. Footage from a nearby security camera depicts him getting out of Stone's car and running around an adjacent building. A different camera's footage shows a puff of smoke from a gunshot.[1] Oliver fired five shots at Smith's car, striking Smith in the thigh. Oliver then ran back to Stone's car, and the pair drove off.[2]

---

[1] That footage also shows two streaks of light moving rapidly toward Oliver. Def.'s Ex. 1 at 2:45.

[2] Officers later recovered the firearm, a CZ75B 9-millimeter pistol, from Oliver's home. They also recovered five 9-millimeter shell casings from the scene.

4

A grand jury in the Western District of North Carolina indicted Oliver for possession of a firearm by a felon. He pleaded guilty.

The presentence investigation report calculated Oliver's total offense level as 23. The report started with a base offense level of 20 because of Oliver's prior felony conviction. It then applied a 2-level enhancement because the offense involved a stolen firearm, a 4-level enhancement because Oliver possessed a firearm in connection with another felony offense, and a 3-level reduction because he accepted responsibility.

Oliver objected to the 4-level enhancement, which listed assault with a deadly weapon and discharging a weapon into occupied property as the connected felonies. He said those cross-references were inappropriate because he acted in self-defense. Supporting his assertion of self-defense, Oliver claimed that the gang members were "armed with bottles, armed with knives, and armed with at least two firearms." J.A. 337. He described the event as "a shootout." J.A. 337. And he said that the puff of smoke visible on the security footage came from a gang member's gun, not his own.

Rejecting Oliver's claim of self-defense, the district court applied the enhancement. After denying several departure motions, the court calculated Oliver's Guidelines range using a criminal history category of IV and a total offense level of 23. That yielded a sentencing range of 70–87 months in prison. Considering the 18 U.S.C. § 3553(a) factors, the court highlighted the nature and circumstances of the offense and the need for deterrence. But noting Oliver's cooperation, it sentenced him to 70 months in prison and three years of supervised release.

The district court then addressed the conditions of Oliver's supervised release. On top of five mandatory conditions, the court imposed twenty-four "standard" conditions. Four (Conditions 5, 8, 12, and 16), are relevant here. They state:

> 5. The defendant shall live at a place approved by the probation officer. The probation officer shall be notified in advance of any change in living arrangements (such as location and the people with whom the defendant lives). . . .

> 8. The defendant shall not communicate or interact with any persons engaged in criminal activity, and shall not communicate or interact with any person convicted of a felony unless granted permission to do so by the probation officer. . . .

> 12. If the probation officer determines that the defendant poses a risk to another person (including an organization), the probation officer may require the defendant to notify the person about the risk. The probation officer may contact the person and make such notifications or confirm that the defendant has notified the person about the risk. . . .

> 16. The defendant shall submit his/her person, property, house, residence, vehicle, papers, computers[,] . . . or other electronic communications or data storage devices or media, or office, to a search conducted by a United States Probation Officer and such other law enforcement personnel as the probation officer may deem advisable, without a warrant. The defendant shall warn any other occupants that such premises may be subject to searches pursuant to this condition.

J.A. 188.

Oliver asked the court to explain why the standard conditions were appropriate for his case. The court declined, and counsel objected to seven of the conditions—including Conditions 5, 8, 12, and 16.

The court adopted Condition 5, noting there was no "constitutional or [] statutory problem with that one" and that "the probation office does need to know exactly where defendants are living." J.A. 381.

6

As for Condition 8, the discussion split into two parts—the criminal-activity clause and the felon-interaction clause. First, Oliver objected that he shouldn't be restricted from interacting with felons. He argued that "convicted felons are people who have served their time and paid their penalty." J.A. 381. And he said the felon-interaction clause "speaks too broadly," emphasizing that another judge in the district (Judge Bell) narrows the condition to "known felons." J.A. 381–82.

For the criminal-activity clause, Oliver argued that the restriction should be limited only to those who Oliver "knows to be engaged in criminal activity." J.A. 381. Once again, he stressed that Judge Bell had amended the condition to require knowledge.

The court responded that "you're never supposed to be engaged with someone in criminal activity." J.A. 382. But it agreed that limiting the condition to those whom "the defendant knows [are] engaged in criminal activity" was appropriate. J.A. 382. Oliver then said, "If you're curious how Judge Bell words it, 'with any person he/she knows to be engaged in criminal activity.'" J.A. 382. The court accepted that adjustment, but the written judgment doesn't reflect the change.

Oliver next requested the following change to the felon-interaction clause, also endorsed by Judge Bell: Oliver "[s]hall not communicate or interact with any person he/she knows to be a convicted felon unless granted [permission] to do so by the probation officer." J.A. 382. Again, the court modified the condition to mirror that adopted by Judge Bell.

As for Condition 12, Oliver objected that the condition was "too vague" and an improper delegation of the court's authority. J.A. 383. The court asked only one question:

"What did Judge Bell and/or Judge Conrad do?" J.A. 383. After hearing that both judges imposed the condition without change, the court overruled Oliver's objection.

The conversation about Condition 16 also centered on Judge Bell's decisions. Defense counsel argued that it should apply only to sex offenders. Invoking Supreme Court authority, the district court said that it would allow the search condition so long as it required reasonable suspicion. Then the prosecutor mentioned "that Judge Bell left probation with th[e] discretion [to conduct warrantless searches] if they're not involving a law enforcement agency." J.A. 387. The court said that it "would like to adopt what Judge Bell has adopted." J.A. 388. Ultimately, the court specified that the revised condition would "limit[] the search to probation officer needs [] unless there are safety issues, [in which case] law enforcement [may] accompany the probation officer at the initial entry." J.A. 388.

Thus, the court adopted Conditions 5 and 12 as written but modified Conditions 8 and 16. This appeal followed.[3]

---

[3] The district court has since revised (and renumbered) its standard conditions of supervised release. *See* Misc. Order No. 3:21-MC-0003 (W.D.N.C. Sept. 30, 2021) (Doc. No. 4). Condition 5 (now 9) contains another clause: "If advance notification is not possible due to unanticipated circumstances, the defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change." *Id.* at 2. Condition 8's (now 12's) criminal-activity and felon-interaction clauses require the defendant know of the third party's criminal or felon status. *Id.* at 3. Condition 16 (now 19) requires that probation officers have reasonable suspicion before searching. *Id.* at 4. And the previous Condition 12 is no longer standard.

8

## II.

Oliver first argues that the 4-level sentencing enhancement for possessing a firearm in connection with another felony offense under U.S.S.G. § 2K2.1(b)(6)(B) was inappropriate. He asserts that the district court incorrectly placed the burden on Oliver to prove he acted in self-defense and that it erred when it found that Oliver alone fired his weapon. We vacate the judgment and remand for the district court to reconsider the enhancement.

Oliver's presentence investigation report recommended that the district court apply a 4-level sentencing enhancement because used "used or possessed [a] firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). The report listed assault with a deadly weapon and discharging a weapon into occupied property as the connected felony offenses. *See* N.C. Gen. Stat. §§ 14-32(b), 14-34.1.

But in North Carolina, a defendant can't be convicted of those charges if he or she reasonably believed that the use of force was "necessary to prevent imminent death or great bodily harm" to themselves—i.e., when they acted in self-defense. *See* N.C. Gen. Stat. § 14-51.3(a)(1). At sentencing, Oliver made this precise argument. In his telling, Oliver was fleeing from the gangs' continuing pursuit of him and his girlfriend after they left the club. And Oliver says that he fired the shots because he feared for his life. Oliver also argued that a puff of smoke, visible in one of the videos, was evidence of a shot being fired at him. The government responded (and the district court found) that Oliver could not claim self-defense because he (1) chose to continue the hostilities, and (2) was the only one who fired a weapon.

9

But after reviewing the video, we conclude that the parties and the court may have overlooked a relevant fact. The security video shows two streaks of light rapidly moving through the frame in Oliver's direction. Def.'s Ex. 1 at 2:45. One of those streaks appears in the frame at about the same time as the puff of smoke. It doesn't appear that the parties or the district court noticed the streaks of light when considering the enhancement; no one mentioned them.

To be clear, we do not know what those streaks represent. And even if we did, it would be improper for us to comment on the significance of this evidence in the first instance. *See United States v. Buster*, 26 F.4th 627, 636 n.3 (4th Cir. 2022) ("[W]e are a court of review, not of first view." (cleaned up)). But given that the enhancement's application depends on whether Oliver acted in self-defense, we decline to let the evidence go unaddressed. Thus, we vacate Oliver's sentence and remand to the district court for it to consider the evidence in the first instance.[4]

III.

Oliver also contends that the district court abused its discretion by imposing Conditions 5, 8, 12, and 16. He claims the court procedurally erred by failing to adequately explain why he should be subject to those conditions while on supervised release.

---

[4] Oliver also complains that the district court incorrectly placed the burden of proving self-defense on him. We decline to address this issue. Rather, we leave it to the district court on remand to properly allocate the burden of proof.

Although we're vacating Oliver's sentence, we address this issue, as it's likely to arise on remand. *United States ex rel. Drakeford v. Tuomey Healthcare Sys., Inc.*, 675 F.3d 394, 406 (4th Cir. 2012) ("[O]ur precedent is clear that we may address issues that are likely to recur on remand.").

"District courts have broad latitude to impose conditions on supervised release, and so we review such conditions only for abuse of discretion." *United States v. Armel*, 585 F.3d 182, 186 (4th Cir. 2009) (cleaned up). "We do not expect district courts to robotically tick through individual explanations for every condition imposed," "but [they] must adequately explain [their] decision." *United States v. Boyd*, 5 F.4th 550, 557 (4th Cir. 2021) (cleaned up); *United States v. Worley*, 685 F.3d 404, 407 (4th Cir. 2012). "The more onerous the term of supervised release . . . the greater the justification required." *Boyd*, 5 F.4th at 557 (cleaned up). "Failure to provide such an explanation constitutes procedural error." *United States v. McMiller*, 954 F.3d 670, 676 (4th Cir. 2020).

In determining whether the district court adequately explained the conditions of supervised release, we can look to the court's analysis of the § 3553(a) factors supporting the term of imprisonment. *See United States v. Aplicano-Oyuela*, 792 F.3d 416, 425 (4th Cir. 2015) ("A court's sentencing rationale . . . can support both imprisonment and supervised release."). "[W]e have never required that a district court conduct two § 3553(a) analyses, one related to the term of imprisonment and a second related to the term of supervised release." *Id.* (quoting *United States v. Clark*, 726 F.3d 496, 501 (3d Cir. 2013)).

11

After the court told Oliver that he would be subject to the district court's standard conditions, his counsel requested an explanation for why they were appropriate. The court declined, and counsel objected to several of them, including Conditions 8, 12, and 16.

Condition 8 provides: "The defendant shall not communicate or interact with any persons engaged in criminal activity, and shall not communicate or interact with any person convicted of a felony unless granted permission to do so by the probation officer." J.A. 188. The court addressed the criminal-activity clause first. It said, "you're never supposed to be engaged with someone in criminal activity." J.A. 382. And it modified the condition to require Oliver have actual knowledge of the third party's criminal activity.

That explanation is brief but sufficient. The bar on association is limited to those actively participating in criminal activity. And its relation to Oliver's status as a felon is obvious.[5]

The court's explanation for the felon-interaction clause, on the other hand, falls short of the mark. Although the district court modified the condition (based on how another judge limited it application), the court didn't justify imposing the condition in the first place. There's no indication, for example, that Stone—the person Oliver was with when he committed the offenses—was a felon. So it's not self-evident that this broad restriction on Oliver's right to association is appropriate. *See Boyd*, 5 F.4th at 559 (explaining that "a

---

[5] The court's written judgment conflicts with the court's oral pronouncement of the condition. As Oliver correctly notes, the clause should require his actual knowledge. We've held that "if a conflict arises between the orally pronounced sentence and the written judgment, then the oral sentence controls." *United States v. Rogers*, 961 F.3d 291, 296 (4th Cir. 2020). Because we are vacating the sentence on other grounds, the district court can correct the mistake on remand.

12

sentence-as-a-whole explanation can suffice" when "the reasons for a given condition are self-evident" (cleaned up)).

As we made clear in *Boyd*, the "duty to explain cannot be satisfied or circumvented through the adoption of a standing order purporting to impose special conditions of supervised release across broad categories of cases or defendants." 5 F.4th at 557 (cleaned up). That's because courts must make "individualized assessments based on the facts before them and explain sentences in a way that allows for meaningful appellate review." *Id.* And if a standing order can't provide the necessary individualized assessment, neither can the explanations offered by judges in other cases. Rather, the court must give the defendant before it a specific explanation.

The same is true for Conditions 12 and 16. For Condition 12, the district court only discussed how other judges apply the condition.[6] And for Condition 16, the court mentioned how it applied the condition in prior cases. But it never explained why either condition was appropriate in Oliver's case.

In short, just like the court in *Boyd*, the district court here didn't "offer enough of an explanation to satisfy us that it has . . . a reasoned basis for exercising its own legal decision-making authority." *Id.* at 559. In neither case did the court relate the standard conditions to the characteristics of the defendant or his crimes. And we've never endorsed

---

[6] We have suggested that imposing this condition without giving the probation officer meaningful guidance in applying it may be an improper delegation of judicial power. *Boyd,* 5 F.4th at 558, citing *United States v. Cabral*, 926 F.3d 687, 698–99 (10th Cir. 2019).

"a court's wholesale adoption of a menu of standard conditions" without some explanation. *Id.* at 560.

Nor does the court's discussion of the § 3553(a) factors adequately explain the need for Conditions 12, 16, or Condition 8's felon-interaction clause. When the court discussed § 3553(a), it highlighted the nature and circumstances of the offense, the need for deterrence, and Oliver's cooperation, finding those factors "particularly important." J.A. 369. While those factors may be sufficient to justify the conditions at issue as a general matter, there isn't a sufficiently clear nexus "to allow for meaningful appellate review." *Gall v. United States*, 552 U.S. 38, 50 (2007).

Nothing about the circumstances of Oliver's offense or principles of deterrence relate to the requirement that Oliver refrain from associating with felons (Condition 8), report the risks he poses to others (Condition 12), or submit himself to warrantless searches (Condition 16). So we lack a foundation on which to determine whether the district court appropriately exercised its discretion in imposing these conditions.

We therefore direct the district court on remand to consider anew the need for these conditions. If the court elects to impose some or all of them, it should offer an explanation sufficient to allow for appellate review.

*VACATED AND REMANDED*

TRAXLER, Senior Circuit Judge, concurring in the result:

I readily agree with my colleagues that a remand is in order to give the district court and the parties the opportunity in the first instance to consider the origin and significance of the streaks of light seen on the puff-of-smoke video. The district court should take this opportunity to verify its understanding that the government has the burden of proof on the enhancement and on the issue of self-defense. *See United States v. Raglin*, 500 F.3d 675, 677 (8th Cir. 2007). In making these decisions the district court in my view must consider all the relevant circumstances of the entire evening and explain its reasoning, particularly if it discounts any uncontradicted evidence of significance. *See, e.g., United States v. Francis*, 686 F.3d 265, 273 (4th Cir. 2012) ("A court commits clear error when it makes findings without properly taking into account substantial evidence to the contrary.") (cleaned up).

I therefore concur in the results reached by my colleagues.